## MARTIN et al. v. BRAND et al., Appellants.

### Division Two, May 31, 1904.

1. **NO INSTRUCTIONS: Law Case: Limitations.** Where no declarations of law applicable to the testimony offered are requested by either party, the appellate court can not intelligently review the finding of the court on the question that plaintiffs' action in ejectment is barred by the statute of limitations.

2. **EJECTMENT: Certificate of Entry: Best Evidence.** The oral testimony of a witness is not the best evidence to establish the contents of a lost certificate of entry. A certified copy of the certificate from the proper land office is the proper evidence, and the oral testimony should be excluded.

3. ———: ———: **Possession Identifying Patentee.** Where the land was entered in the name of James T. Mastin it is competent to show by parol testimony, for the purpose of identifying the real patentee, that the certificate of entry was in the possession of James T. Martin, and also the residence of Martin at the time the entry was made.

Appeal from Morgan Circuit Court.—*Hon. Jas. E. Hazell*, Judge.

REVERSED AND REMANDED.

*M. C. James* and *J. D. Hubbard* for appellants.

(1) It is the legal title only that is recognized as the ground of action, and a plaintiff must recover in ejectment, if at all, on the strength of that title, and on plaintiffs' own showing an outstanding title to the land in suit is found in a party other than themselves. Kingman & Co. v. Sievers, 143 Mo. 519; Clay v. Mayr, 144 Mo. 376; Hunt v. Searcy, 167 Mo. 158. Title, and not a mere right to title, must be shown to entitle plaintiffs to recover. Robinson v. Claggett, 149 Mo. 153. Plaintiffs' evidence shows that James T. Martin, plaintiffs' grantor, never had any title to the land in suit. This

alone is sufficient to defeat plaintiffs' action. Rogers v. Vanderburg, 168 Mo. 430. (2) Long after James T. Martin made a deed attempting to convey the title in this land, it remained as wild and uninclosed land in the actual use and possession of no one. No inclosure or improvements of any kind had ever been made upon this land until the first three months of 1900, when Brand caused it to be surveyed and inclosed it with posts, ready for wire; this inclosure with posts, the surveying and blazing of trees, and the authority of Weltman as tenant of part of the land, exercised over the whole tract, were acts so open, pronounced and conspicuous that anyone claiming title thereto might see ample evidence of a hostile claim or possession that he might challenge or contest. The evidence shows that plaintiffs were as barren of title to this land by limitation as they were of title by deed. Robinson v. Claggett, 149 Mo. 153; Shumate v. Snyder, 140 Mo. 77; Benne v. Miller, 149 Mo. 228.

*Wm. Forman, J. W. Jamison* and *J. H. Whitecotton* for respondents.

(1) The case of Hall v. French, 165 Mo. 442, eliminates the question of limitation raised under sec 4268, Revised Statutes 1899, by the use of the following language: "Section 4268, Revised Statutes of 1899, properly construed, as it was as to the facts involved, in Fairbanks v. Long, and in Collins v. Pease, supra, means that when a person is entitled to the possession of land, and does not assert in court his claim within thirty years after his cause of action accrued, and does not pay taxes on the land during that time, his claim is barred as against a person who has been in possession and paid taxes for that length of time." The undisputed evidence in this case is that appellants paid no taxes on this land. The testimony further conclusively shows that appellants did not have the continued possession of this

land during the whole of the year immediately preceding the date of the beginning of this suit in this cause. (2) The testimony tends strongly to show that the land was entered in the name of James T. Martin, and by mistake the entry and patent was entered and issued in the name of "James T. Mastin." There is no contention as to the fact that James T. Martin paid the cash required to procure the patent. It is also very clearly shown by the testimony that James T. Martin and James T. Mastin are one and the same person. It is also shown by the evidence that the same person that entered the land and to whom the patent issued conveyed the land to respondents. The deed from James T. Mastin or Martin to respondents was in evidence before the trial court, and the court no doubt found, as it had a right to do, that James T. Mastin and James T. Martin are one and the same person. It was sufficient to show that the grantor of the respondents was the true owner whether Martin or Mastin. This could be shown by evidence *aliunde,* as it was shown in the case by the overwhelming testimony. This doctrine is authorized by the case of Wakefield v. Brown, 38 Minn. 361, and other authorities that are undoubtedly the law.

FOX, J.—This is an action of ejectment, commenced in the circuit court of Morgan county, Missouri, on the second day of July, 1901.

The petition is in the usual form, and there is no necessity for reproducing it here. The answer of the defendants is a general denial.

The testimony introduced by plaintiffs and upon which they must rely to sustain the judgment in this cause, was as follows:

"W. R. Martin, being duly sworn in behalf of the plaintiffs, testified as follows:

"Q. Where do you reside? A. Monroe county.

"Q. Are you one of the plaintiffs in this suit? A. Yes, sir.

"Q. Who was your father? A. James T. Martin.

"Q. You have examined the description of the land in the petition in this suit? You know what lands are described, do you? A. Yes, sir.

"Q. I will ask you whether or not your father is living? A. No, sir.

"Q. When did he die? A. The eighteenth of last February.

"Q. I will ask you whether or not your father had at any time before his death in his possession any patent or certificate or other papers showing an entry by him of the lands in dispute? A. He had a certificate of entry for this land in dispute.

"Q. You know where that certificate is? A. I suppose it is in Washington City.

"Mr. James: We wish to interpose an objection here. If there was an entry made, if they haven't a patent, a certified copy of the original patent could have been obtained from the record very easily, and it would be the best record and the best evidence as to who made the entry and as to whom the patent was issued.

"The Court: They are trying to show now that the entry was not obtainable. Objection overruled.

"To which ruling of the court, the defendants, by counsel, duly excepted at the time.

"Witness: I had it sent to Washington City.

"Mr. Jamison: Whom did you send it by or to? A. I instructed 'Squire Woodson at that time that lived at Stoutsville to send it to R. N. Bodine, at that time our congressman who lived at Washington City.

"Mr. James: We object to him testifying as to what somebody else did.

"The Court: The objection overruled.

"To which ruling of the court, the defendants, by counsel, duly excepted at the time.

"Mr. Jamison: I will ask you whether or not you went to see Congressman Bodine about this, and if so when? A. Yes, sir; last Tuesday I went to see him.

"Q.  I will ask you whether or not he or you were able to find it?  A.  No, sir.

"Q.  Do you remember about the date of that certificate?

"Mr. James:  Now, your Honor, as to that, if a certificate was issued in the land office a certified copy of that certificate could certainly be obtained.  If the original was lost then they could introduce the next evidence, which would be a certified copy of that certificate, and that is what they ought to have here.

"The Court:  Well, I will let them go.  I don't know what they are going to show.

"Mr. Jamison:  I will ask you if you remember about the date of that?  A.  Not exactly.  Sometime in the latter part of '50, '55 to '60 somewhere, I don't remember the date, somewhere along in that number of years somewhere.

"Q.  When did you say your father died?  A. This last February.

"Q.  I will ask you to examine this deed?  (Paper marked Exhibit 1.)  I will ask you if you are one of the grantees mentioned in that deed?  A.  Yes, sir.

"Q.  I will ask you if your coplaintiff is the other grantee mentioned in that deed?  A.  Yes, sir.

"Mr. Jamison:  If the court please, we offer the deed in evidence, warranty deed from James T. Martin, and Mary J. Martin, signed by James T. Martin and Mary J. Martin, bearing date May 13, 1896.  James T. Martin and wife conveys the land described in plaintiffs' petition in this suit to the plaintiff.

Cross-examination, by Mr. James.

"Q.  Mr. Martin, you say you don't remember the date of that certificate?  A.  Not exactly; no, sir; I couldn't say positively.

"Q.  Have you ever tried to get a duplicate of it? A.  No, sir.

"Q.  You never sent to the land office at Warsaw

Martin v. Brand.

to get a duplicate of that certificate? A. No, sir.

"Q. Have you ever examined the record at all so as to see who is on the certificate—or in the land office down there as to who made this entry? A. No, sir.

"Q. Has anyone ever told you who that entry was made in the name of?

"Mr. Jamison: I object to that as immaterial.

"The Court: Objection overruled.

"To which ruling of the court, the plaintiffs, by counsel, duly excepted at the time.

"Witness: At Warsaw?

"Mr. James: No, anywhere? A. I have some remembrance.

"Q. I will ask you if you don't know as a matter of fact that that entry shows that that land was entered by *James T. Mastin?* A. Where at?

"Q. At Warsaw? A. No, sir; don't know it.

"Q. You don't know anything about that? A. No, sir.

"Q. You say you can't remember the date of that certificate? A. No, sir; not exactly.

"Q. But you do remember the description of the land? A. Now, I will tell you how I do that, if you will permit me to.

"Q. Certainly. A. Now you see when this deed was given to me and my brother-in-law it was written by 'Squire Woodson. He was also notary public at the time. My father was quite old, and I had him come to the house out in the country about eight miles. 'Squire Woodson is getting rather old, and when he wrote this deed he examined to see whether or not—whether he had made any mistake or not in the description of the land. That is how come me to be so positive in regard to it being identical and the same as on that certificate.

"Q. Did you ever write Mr. Jamison that you had a certified copy of the patent? A. A certified copy?

"Mr. Jamison: We are going to offer that, if you want that in. We have a certified copy of it here.

"By Mr. Jamison: I will ask you whether you are familiar with your father's handwriting? A. Yes, sir.

"Q. I will ask you whether or not that is in his handwriting? A. Yes, sir.

"Q. I will ask you whether or not he signed his name that way? A. Yes, sir.

"By Mr. James: How long was this certificate in your father's possession before this deed was made to you? A. I don't know; couldn't answer that.

"Q. As well as you know? A. I don't know.

"Q. When was the first time you ever saw it? A. *The day that he gave us the deed.*

"Q. That was the first time you ever saw it? A. That was the first time I ever saw it.

"By Mr. Jamison: I will ask you whether or not before your father's death, before he made that deed, you had ever heard him speak of owning the land here in this county? A. Yes, sir; frequently.

"Q. How long since? A. Well, I couldn't say, probably for the last, may be —.

"Q. Twenty years, likely? A. I couldn't say that positively. Off and on though from the time I entered my teens on up."

Plaintiffs then offered certified copy of original patent to the land in dispute, issued in the name of James T. Mastin, dated November 1, 1859. This was all the evidence offered by plaintiffs.

At the close of plaintiffs' testimony defendants requested the court to give a peremptory instruction (in the nature of a demurrer to the evidence), directing a verdict for the defendants. This instruction was refused and exceptions to the action of the court upon such refusal, were duly preserved.

This is the only question which is properly preserved for our consideration.

There was testimony offered by the defendants upon the theory that plaintiffs' action was barred by the statute of limitation. There were no declarations of law

applicable to the testimony offered requested by either party, hence we are unable to intelligently review the action of the trial court upon that branch of the case, in the absence of anything disclosed by the record as to the theory upon which the court decided that particular branch of this controversy.

Upon the proposition that the testimony introduced by plaintiff was insufficient to support the judgment, we will say, that we have carefully considered all the evidence offered by plaintiffs, as is disclosed in the record before us; have read it with a marked degree of care, and it is reproduced in the statement of this cause, and we have reached the conclusion that there is an entire absence of substantial, competent evidence to warrant the court in finding that the legal title to the land in dispute was vested in plaintiffs.

The testimony of witness Martin is the only evidence offered as to the certificate of entry of this land. This testimony was objected to, and we think it is clear that the objection should have been sustained. There certainly could have been no trouble in obtaining from the proper land office a certified copy of the certificate of entry. If the original was not in the possession of the plaintiffs, the next best evidence was a certified copy, and this should have been required of the plaintiffs in the trial of this cause.

The testimony of witness Martin to establish the contents of the certificate of entry, was not the best evidence, and should have been excluded. After a showing by proper evidence that an entry had been, in fact, made, then it was competent to show by parol that the certificate was seen in the possession of the father of the plaintiff Martin, as a fact tending to show that the entry was, in fact, made by the father, even though the certificate and patent were issued in the wrong name. The testimony of Martin being incompetent to establish the entry of the land in dispute, we have then the case standing without any proof of entry by the plaintiffs' grantor,

but giving full consideration to the testimony of witness Martin, it fails to show satisfactorily in whose name the land was entered. He fails to give any date of the entry and says on cross-examination that he knows nothing about the fact as to whose name the land was entered in.

Again, if this land was, in fact, entered by James T. Martin, and in issuing the certificate of entry and patent to him, the name of James T. Mastin was used instead of Martin, there should be some proof of that fact. While the proof need not necessarily be direct or positive, yet there should be such a state of facts shown as would warrant the court in the legitimate inference that James T. Mastin, as mentioned in the patent, was in fact none other than James T. Martin, who in fact made the entry.

It is simply a question of identity; but there must be some substantial proof identifying James T. Martin as the person who made the entry, and to whom the patent was issued, although a different name was used. In other words, there should be sufficient proof to warrant the court in reaching the conclusion that James T. Mastin, as mentioned in the certificate of entry and patent, should be regarded and recognized as James T. Martin. It is apparent from an impartial analysis of the testimony offered by the plaintiffs that there was not sufficient evidence to authorize the court in identifying the person represented by the name of James T. Mastin in the certificate of entry and patent, as being plaintiffs' grantor, James T. Martin.

It may be that such is the fact, and we confess the similarity of names and the fact that the land had been assessed to him in the name of James T. Martin, creates in our minds a suspicion and even a strong probability that Martin was the real living person represented under the name of Mastin, but in dealing with titles to real estate, such titles should not be vested or divested upon such unsatisfactory proof.

Doubtless, if Martin, in fact, made this entry, the fact of his identity under the name of Mastin, is susceptible of more satisfactory proof than was introduced in the trial of this cause.   Surely, there was some correspondence in connection with the making of the entry; he doubtless signed an application for it.   Congressman Bodine's testimony as to his possession of the certificate of entry would throw some light on the question. Proof could unquestionably be made that James T. Martin, at the time of making this entry, was a resident of St. Louis county, which, at least, would be a circumstance as to his identity, by reason of the recital in the patent that the certificate of entry was deposited by James T. Mastin of St. Louis county, Missouri.

In fact, that Martin and Mastin are one and the same identical person should be shown, and the evidence, at least, should be of that character as would warrant the court in the legitimate and reasonable inference from the testimony offered that such was the fact.   The use of the name, James T. Mastin, in the patent, does not necessarily prevent the title from being vested in James T. Martin.   By proof *aliunde* it may be shown that James T. Mastin is identified in the person of James T. Martin, and upon a satisfactory showing in this respect the patent would in effect vest the title in James T. Martin.   That the name used in a conveyance is the true name of the party to whom the grant is made, does not furnish the test as to the validity of the instrument; it only supplies a means of identification and the final test of the result of such conveyance is, who in fact was the person to whom the grant was made?   The name may furnish a means of identification, but at last, when the identification is as to the person to whom the grant is made, the subject of the grant is vested in such person.   [Taylor v. Bowen, 84 Mo. App. 619; Thomas v. Wyatt, 31 Mo. 188; Toole v. Peterson, 9 Ired. L. 180; Scanlon v. Alexander (Minn.), 74 N. W. 146; Wakefield v. Brown, 38 Minn. 361.]

'We have thus briefly given expression to our views upon the testimony in this cause.   It fails in the essential particular to identify James T. Martin, plaintiffs' grantor, as the person who made the entry, or to whom the patent was issued.

To the end that the parties to this action may have a full opportunity of introducing all the testimony they may be able to secure, by the exercise of reasonable diligence, the judgment in this cause, for the errors herein indicated, will be reversed and the cause remanded for a new trial.   All concur.